COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Benton and Bray
Argued at Norfolk, Virginia

ALLEN IVERSON

MEMORANDUM OPINION[*] BY
v.  Record No. 1825-93-1    JUDGE JAMES W. BENTON, JR.
                            JUNE 20, 1995
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Nelson T. Overton, Judge

Lisa P. O'Donnell; Thomas B. Shuttleworth
(Lawrence H. Woodward, Jr.; Shuttleworth,
Ruloff, Giordano & Kahle, P.C., on brief),
for appellant.

Robert H. Anderson, III, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Allen Iverson was convicted in a bench trial for three violations of Code § 18.2-41 for being a member of a mob that injured with the intent to maim Lori K. Clark, Barbara M. Steele, and Steven W. Forrest. On this appeal, he contends that the Commonwealth failed to prove that a mob, as statutorily defined, had formed and, even if a mob had formed, that he was a member of that mob. For the reasons that follow, we reverse the convictions.

The evidence proved that at 11:30 p.m. on February 13, 1993, Iverson arrived at Circle Lanes Bowling Alley and began bowling with five of his high school friends. They bowled in lanes nine and ten. The bowling alley was very busy and crowded that

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

evening.

At midnight, Iverson went to the snack bar. Near the snack bar, a group from Poquoson, Virginia was bowling. The bowlers from Poquoson had arrived at 7:30 p.m. and were bowling on two lanes, including lane thirty. This group included Steven Forrest, Lori Clark, and six other persons. As Iverson stood nearby, the Poquoson bowlers, with the exception of one who was bowling, were sitting at a table in front of the snack bar drinking beer.

Forrest testified that Iverson approached their table cursing at them without cause. He testified that when he stood up to tell Iverson that "we don't have a problem" someone other than Iverson hit him on the back of the head. Forrest said that when he turned to see who hit him, he saw approximately twenty-five males coming from the other end of the bowling area. He said that some of them were throwing punches and throwing chairs at him and his friends. Forrest testified that he also threw chairs during the brawl. He further testified that Iverson did not hit him and that he did not see Iverson hit anyone.

Lori Clark testified that Iverson was walking around near her table cursing at everyone. When Forrest stood up and was hit, a fight began. During the brawl she received a broken thumb from a chair. She also received a contusion to her head. She, too, threw a chair but testified that it did not hit anyone. By her account, forty to fifty people were involved in the brawl,

- 2 -

including people who came from outside the bowling alley.

Julia Weaver, an employee of the alley, testified that sometime after Iverson went to the snack bar she saw ten to fifteen black males run from one end of the alley to the other. She then saw part of the group she had just observed, beating a man.

Brandon Smith, another employee, testified that he saw ten people running toward the high numbered lanes. This group picked up chairs and began throwing them. Smith testified that twenty-five people were involved in the brawl. People from the Poquoson group and others were throwing chairs in the bowling alley. Smith saw a member of the Poquoson group throw a pitcher of beer. Smith also testified that Iverson threw a chair at him and knocked his glasses off his face. He also noticed Iverson throw a chair at a girl's head, causing a large gash to appear.

Barbara Steele was bowling and drinking beer on lane twenty-seven with Christie Alligood and three others. She testified that the bowling alley was very crowded with lots of people standing around. She testified that she heard a "raucous," and she then saw twenty to thirty black males jogging toward the lanes near her. During the brawl, she received a head injury and other contusions over her body. When she saw one of her friends "on the ground with his face swollen up," her "immediate reaction" was to walk up to Iverson, the first person that she saw, and ask, "Why does this have to be racial; why can't you

stop this?" She said Iverson in response pushed Alligood.

Alligood testified that when she saw Steele talking to Iverson, she went to join Steele and Iverson pushed her with his hand. She then moved and did not see Iverson again.

In Iverson's defense, Dwayne Campbell testified that while he and Iverson were waiting for food at the snack bar they were near a group of bowlers who were drinking pitchers of beer. He stated that someone made a racial comment to them. Then one of the men who was drinking beer stood and cursed at Iverson. He said that when he tried to pull Iverson away, one of the men swung a chair and hit him. He said that a brawl then began.

Iverson testified that when he went to the snack bar, he heard loud talking and walked over. A man started calling him "nigger and stuff . . . little boy." He said the man stood and then swung the chair on which he had been sitting. Iverson said he was hit by the chair. Iverson said one of his friends took him out of the bowling alley. Iverson testified that neither Alligood nor Steele spoke to him. Several other defense witnesses corroborated portions of Iverson's testimony and said that they saw Iverson outside while the fight was still ongoing.

I.

Code § 18.2-41 provides that "[a]ny and every person composing a mob which shall maliciously or unlawfully shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disable, disfigure or kill him, shall

- 4 -

be guilty of a Class 3 felony."  Mob is defined as "[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person and without authority of law."  Code § 18.2-38.

The Commonwealth argues that the evidence proved that a mob had formed.  However, we need not decide this question because even if the evidence proved that some of the people in the bowling alley assembled in a manner to constitute a mob, no evidence proved that Iverson was a member of that mob.  Assuming arguendo that a mob had formed, the Commonwealth had the burden of proving beyond a reasonable doubt that Iverson "was a member of a mob that was assembled for the purpose and with the intention to commit an unlawful assault or battery."  Harrell v. Commonwealth, 11 Va. App. 1, 6, 396 S.E.2d 680, 682 (1990).

Reviewing the evidence in the light most favorable to the Commonwealth, the testimony proved that someone other than Iverson hit Forrest as Forrest and Iverson exchanged words. Iverson's confrontation with Forrest was an incident that may have precipitated a brawl but was separate from any mob activity.  No evidence proved that Iverson was a member of any mob that later formed.

"Not every incidence of group violence or assaultive conduct which involves a number of people collectively involved in assaultive conduct constitutes a 'mob' assault and battery." Harrell v. Commonwealth, 11 Va. App. 1, 7, 396 S.E.2d 680, 683

(1990).  If the evidence merely proved that individuals were "independently reacting adversely and violently" to a situation, the proof will not suffice to establish that the individuals were part of a mob.  Id. at 10, 396 S.E.2d at 684.

Although a brawl ensued after the patrons of the bowling alley watched Iverson argue with Forrest and another person punch Forrest, no evidence proved that Iverson joined in any mob that may have formed.  "This evidence is equally, if not more susceptible to the construction that [his conduct was] acts of an individual[] involved in a fray, rather than acts of a mob assembled for a criminal purpose."  Id. at 11, 396 S.E.2d at 685.

Although the evidence would have been sufficient to prove individual assaultive conduct, it was insufficient to prove beyond a reasonable doubt that Iverson acted as part of a mob. Therefore, the convictions are reversed and the case is remanded to the circuit court for such further action as the Commonwealth may be advised.

Reversed and remanded.